## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| VALECIA BOLDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-01262-STA-jay |
| | ) | |
| LAKE COUNTY BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Lake County Board of Education's Motion for Summary Judgment (ECF No. 30) filed May 25, 2021. Plaintiff Valecia Bolden has responded in opposition, and Defendant has filed a reply. The parties having fully briefed the issues, Defendant's Motion is now ripe for determination. For the reasons set forth below, the Motion is **GRANTED in part and DENIED in part**.

## BACKGROUND

Valecia Bolden is a former cafeteria worker at an elementary school in Lake County, Tennessee. Ms. Bolden is not just an employee of the school district but also the parent of a Lake County school student. Ms. Bolden's son is autistic and has special needs related to his diet. When the school system's director of food services required Ms. Bolden to produce medical documentation for her son's dietary needs, Bolden complied. But the director also required Bolden and other cafeteria staff to begin documenting everything Bolden's son ate in the cafeteria. Bolden refused to comply with the new policy and contacted the State of Tennessee to verify what

obligation she had as a parent to provide medical documentation. According to the State of Tennessee, Ms. Bolden was not required to provide the documentation requested by the district. At the end of the school year, the Board informed Bolden that it had decided not to renew her contract as a cafeteria worker. Bolden now alleges that the Board of Education did not renew her contract in violation of the Americans with Disabilities Act ("the ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). The Board seeks judgment as a matter of law on each of Bolden's claims.

To decide the Board's Rule 56 motion, the Court must first consider whether any genuine issue of material fact exists that might preclude judgment as a matter of law. A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the record and show that the evidence fails to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1). Local Rule 56.1(a) requires a party seeking summary judgment to prepare a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local R. 56.1(a). The Board has filed a statement of undisputed facts, and Bolden has asserted that additional material facts are also relevant to her claims. Based on the parties' submissions, the Court finds that the following facts are undisputed for purposes of summary judgment, unless otherwise noted.

## I.   Bolden's Employment with Lake County Schools and Her Son's Dietary Needs

The Board initially hired Bolden as a substitute teacher and substitute cafeteria worker in August 2015. (Def.'s Statement of Undisputed Fact ¶ 1, ECF No. 32.) Bolden became a full-time cafeteria worker at Margaret Newton Elementary School in January 2016, at the halfway point of the 2015-2016 school year. (*Id*. ¶ 2.) Bolden's son is autistic and has a food sensory issue. (Pl.'s Statement of Add'l Facts ¶ 66.) At all times relevant to this case, Bolden's son was a special education student in the Lake County Schools and had an Individualized Education Program ("IEP"). (Def.'s Statement of Undisputed Fact ¶¶ 3-5.) During the 2016-2017 school year, Bolden's son attended Margaret Newton Elementary School, the same school where Bolden worked in the cafeteria. (Pl.'s Statement of Add'l Facts ¶ 67.) Based on his food sensory disability, Bolden's son needed an accommodation for his school meals. (*Id*.) So when her son came to the school cafeteria, Bolden served him food other than the meals offered to the rest of the students. (*Id*. ¶ 68.)

Sometime in August 2017, at the start of the 2017-2018 school year, Glenda Whitson, the district's supervisor of food services, saw Bolden's son eating something different from the other students in the school cafeteria and questioned Bolden about it. (*Id.* ¶ 69.) Whitson informed Bolden that she would need to provide a note from a doctor in order for her son to receive a dietary accommodation. (*Id*. ¶ 70.) Bolden obtained a note from her son's doctor, which was written on a prescription pad, and gave the note to Whitson. (*Id*. ¶ 71.) The parties dispute whether Whitson requested or demanded additional documentation. In any event, the undisputed evidence shows that Whitson told Bolden that more medical documentation explaining her son's diet was needed. (*Id*.) Whitson also implemented a procedure for cafeteria staff to document everything Bolden's son ate in the cafeteria as an accommodation for his food sensory issue. (*Id*. ¶ 72.) When the

school principal, Gamble Snyder, asked Bolden to sign Whitson's form outlining this procedure, Bolden refused.  (*Id.*)

Whitson's instructions for cafeteria staff to log Bolden's son's food prompted Bolden to contact the Tennessee Department of Education in November 2017.  (Def.'s Statement of Undisputed Fact ¶ 53.)  Bolden reported that the district was making her jump through additional hoops compared to other children with dietary restrictions.  (*Id.*)  A staff attorney from the Tennessee Department of Education, Rachel Suppe, contacted the District Superintendent regarding Bolden's complaint.  (*Id.* ¶ 54.)  After discussing the matter with Ms. Suppe, the Superintendent of the Lake County Board of Education, Sherry Darnell, resolved the complaint and decided that the situation was merely the result of miscommunication.  (*Id.* ¶ 55.)

According to Angela Ballard, the cafeteria supervisor at Margaret Newton Elementary, Whitson handled the dietary needs of Bolden's child differently than any other child who needed an accommodation.  (Pl.'s Statement of Add'l Fact ¶ 74.)  Ballard states in an affidavit that other students at the school could not be served certain foods based on texture or taste; however, those children were not required to produce medical documentation to Whitson in order to receive an accommodation.  (Ballard Aff. ¶ 13, ECF No. 33-1.)  And cafeteria workers were never instructed to chart or document the foods served to other children as part of an accommodation until Whitson directed them to do so for Bolden's child.  (*Id.* ¶¶ 14, 15.)  The Board disputes Ballard's claims and cites Whitson's testimony that she had never been asked to accommodate another child with a food sensory processing disorder until Bolden requested the accommodation for her son.  (Def.'s Resp. to Pl.'s Statement of Add'l Fact ¶ 74.)  Whitson also testified that she had worked with students with other food disorders and treated them the same way that she treated Bolden's child.  (*Id.*)

## II.      Bolden's Performance Evaluations

The remainder of the evidence cited by the parties concerns Bolden's record as a cafeteria worker and the Board's ultimate decision not to renew Bolden's contract after the 2017-2018 school year.  Suffice it to say, the parties dispute many of the facts about Bolden's job performance and what role her job performance played in the Board's decision not to renew Bolden's contract.

Bolden received three written performance evaluations during her employment with the Lake County Schools, all completed by Glenda Whitson.  (Def.'s Statement of Undisputed Fact ¶ 6.)  The Board of Education has made each written evaluation form an exhibit to its Motion for Summary Judgment.  On Bolden's first evaluation dated May 19, 2016, Whitson noted that Bolden "was very punctual and dependable" but wrote in "Need to quit taking things personally" under the section titled "'Needs Improvement' Goals."  (*Id*. ¶ 7.)  Bolden also received a score of "Developing" in the category of "Receptive to Constructive Criticism."  (*Id*. ¶ 8.)  The Board of Education cites evidence from the 2015-2016 school year about a January 2016 encounter when Whitson observed the length of Bolden's fingernails and, assuming that they were false nails, instructed Bolden to remove them.  (*Id*. ¶ 13.)   Bolden initially refused but later acquiesced after the principal asked her to remove them.  (*Id*.)  Bolden denies that the nails were false but admits that she had them trimmed after school leadership asked her to do so.  Whitson testified in her deposition that Bolden became angry with her and refused to speak to her for three weeks, a claim that Bolden denies.  (*Id*. ¶ 14.)

Bolden received her second written evaluation on May 19, 2017.  Whitson wrote in "Valecia needs to work on being more personable" under the section titled "'Needs Improvement' Goals."  (*Id*. ¶ 9.)  Whitson gave Bolden a rating of "Developing" in the category of "Courteous to students, staff, & parents" and a rating of "Needs Improvement" in the categories of "Receptive

to New Ideas," "Receptive to Constructive Criticism," and "Cooperates with Other Staff Members." (*Id*. ¶¶ 10, 11.)  At the end of the 2016-2017 school year, Whitson advised Lynn Dotson, who was then principal of Margaret Newton Elementary, that Whitson did not want to renew Bolden's contract based on her attitude.  (*Id*. ¶ 58.)  Principal Dotson disagreed, citing Bolden's perfect attendance record.  (*Id.*)  Because Principal Dotson wanted Bolden to remain employed at the school, Whitson renewed Bolden's employment for the 2017-2018 school year. (*Id.* ¶ 59.)

Bolden's third and final written evaluation was dated January 30, 2018.  Instead of rating employees with labels like "Needs Improvement," this evaluation form scored employees on a number scale, with a score of 1 meaning "poor" and 5 "excellent."  Whitson scored Bolden a 2, or "fair," in the categories of "Courteous to Students, Staff, and Parents," "Enthusiastic," "Cooperates with Other Staff Members," and "Receptive to Constructive Criticism." (*Id*. ¶ 12.)

### III.    The Decision Not to Renew Bolden's Contract

At the end of the 2017-2018 school year, Whitson and Gamble Snyder, the new principal of Margaret Newton Elementary, recommended to Superintendent Darnell that the Board not renew Bolden's contract.  (*Id.* ¶ 59.)  Whitson testified in her deposition that she made the recommendation because she believed Bolden was "hateful, uncooperative, and combative." (*Id.* ¶ 60.)  Principal Snyder testified that he also observed Bolden to be "hateful and hostile" towards other staff members in the school and had received complaints from staff about Bolden's attitude. (*Id*. ¶¶ 61, 62.)[1]  Principal Snyder concluded that the Board should not renew Bolden's contract

---

[1] Bolden has raised a hearsay objection to this testimony, to the extent that Principal Snyder is testifying about out-of-court conversations he had with school staff.  The Court notes Bolden's objection but finds it mostly unconvincing.  Snyder has not gone into any specifics of the alleged complaints about Bolden; he does not identify the staff members or describe the nature or

because Bolden "was hateful, had a bad attitude, and created a hostile work environment in the cafeteria." (*Id.* ¶ 63.) Superintendent Darnell testified that she accepted the recommendation not to renew Bolden's contract based on her perception that Bolden "had an attitude and she was unable to get along with others." (*Id.* ¶ 64.)

Bolden disputes the characterizations made by Whitson and Snyder in their deposition testimony. Bolden cites Whitson's other testimony admitting that Bolden did her job and never received formal discipline prior to her non-renewal. (Pl.'s Statement of Add'l Fact ¶ 76.) Angela Ballard was Bolden's direct supervisor in the cafeteria at Margaret Newton Elementary during the 2016-2017 and 2017-2018 school years. (*Id.* ¶ 77.) Ballard observed Bolden to be a conscientious and hard worker. (*Id.* ¶ 78.) In Ballard's opinion, Bolden had a positive attitude toward her work and other people. (*Id.* ¶¶ 79, 83.) Because Bolden closely followed policies and procedures on the job, she would speak up if she observed another employee not following correct procedures. (*Id.* ¶¶ 80, 81.) But Ballard did not observe Bolden "challenge people in a hateful or unfriendly way, but she did things correctly herself and she insisted that other people do things correctly." (*Id.* ¶ 82.) And Ballard never observed Bolden to be "hateful," "combative," "angry," or "disrespectful" to Whitson. (*Id.* ¶ 84.) According to Ballard, Whitson's observations of Bolden were very limited and very short in duration. (*Id.* ¶ 85.) Ballard would have recommended that

---

circumstances of the complaints. Rather than substantiate the truth of the complaints themselves, Snyder's testimony simply explains his evaluation of Bolden's job performance and his recommendation that the Board not renew Bolden's contract at the conclusion of the 2017-2018 school year. "A statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay." *Wylie & Sons Landscaping, LLC v. FedEx Ground Package Sys., Inc.*, 696 F. App'x 717, 722 (6th Cir. 2017) (quoting *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009)). The Court therefore finds that Snyder's limited testimony about unspecified complaints does not raise a hearsay concern.

Bolden be rehired for the 2018-2019 school year but was given no opportunity to have input on Bolden's evaluation or the decision not to renew her contract.  (*Id.* ¶¶ 86, 87.)

**IV.    Episodes Between Bolden and Kim Mills During the 2017-2018 School Year**

In its summary judgment briefing, the Board has described a number of incidents in which Bolden and another school cafeteria employee, Kim Mills, clashed in the workplace during the 2017-2018 school year.  However, the Board has not presented any testimony, in either a deposition or an affidavit, from Bolden, Mills, or any other witness with firsthand knowledge of the episodes.  Instead, the Board has cited a raft of unverified exhibits, purporting to be Whitson's notes documenting the work-related events based on her after-the-fact interviews and conversations with the participants.  *See* Jan. 2016 Notes, ex. D to Def.'s Mot. for Summ. J. (ECF Nos. 30-5); Aug. 24, 2017 Notes, ex. E (ECF No. 30-6); Feb. 8, 2018 Notes, ex. F (ECF No. 30-7); Apr. 18, 2018 Notes, ex. G (ECF No. 30-8); Apr. 24, 2018 Notes, ex. H (ECF No. 30-9); and Undated Notes, ex. I (ECF No. 30-10).  Each exhibit consists of a single page or less of typewritten text and bears a signature reading "Glenda Whitson."

Bolden has lodged a special evidentiary objection to this proof, arguing that most or all of the purported notes are inadmissible hearsay.  Federal Rule of Evidence 801 defines hearsay as a statement "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Bolden's hearsay objection has merit.  The Board obviously offers the notes to prove the truth of the matters asserted within the documents.  Defendant's memorandum recites the particulars of four different incidents and then cites the notes as Whitson's documentation of the events and evidentiary support for her version of what occurred.  *See* Def.'s Mem. in Support 2-5 (ECF No. 30-1) ("In January of 2016, Ms. Whitson documented an incident . . ."; "On February 8,

2018, Ms. Whitson documented an incident . . .”; “On April 18, 2018, Ms. Whitson documented an incident . . .”; and “A few days later, on April 24, 2018, Ms. Whitson documented an incident . . . .”).  It is clear that the Board has relied on these out-of-court statements to prove what happened on each of the dates mentioned in the notes.[2]  Because the notes are out-of-court statements introduced to prove the truth of the matters asserted in the notes, the Court finds that the notes are inadmissible hearsay.

Additionally, the notes present an entirely separate evidentiary problem in that the Board has not authenticated the notes in any way.  “To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.”  Fed. R. Evid. 901(a).  None of the “notes” exhibits is attested under penalty of perjury or purports to be a declaration pursuant to 28 U.S.C. § 1748, and none is accompanied by any such attestation.  *See* 28 U.S.C. § 1748 (permitting a witness to provide an unsworn declaration as long as the declaration contains the language prescribed by statute).  Even though Whitson provided an affidavit, her statement never mentions the notes, much less describes the how, when, or why of her notetaking.

The Court finds it unnecessary to delve too deeply into Bolden’s objection to the notes. Local Rule 56.1(e) addresses objections to Rule 56 evidence, requires a party with an evidentiary objection to raise the objection as part of its response, and gives the non-objecting party an

---

[2] The Board cites comments Ballard made to Whitson about a conversation Ballard had had with Kim Mills in April 2018, which Whitson then documented in her notes.  This aspect of Whitson’s notes is problematic as it compounds the hearsay problems the Court has already identified.  Whitson’s notes (hearsay) contain statements from Ballard (hearsay) about a conversation Ballard had with Mills (hearsay).  In other words, the proof is actually three layers of hearsay, and the Board has not shown how any of the information about what Ballard and Mills discussed would be admissible.  Because the Court declines to even consider the evidence derived from the notes, the Court need not resolve the triple hearsay problem.

opportunity to respond to the objection.  Local R. 56.1(e).  Here the Board filed a reply brief after

Bolden raised the hearsay objection in her response.  However, the Board did not respond to

Bolden's argument on the admissibility of this proof.  Just as a party can waive an objection to

summary judgment evidence by failing to raise it in a timely manner, a party can waive its

opportunity to meet an objection by failing to address it.  By failing to respond to the hearsay issue,

the Board has waived it, at least for purposes of summary judgment.  Therefore, the Court declines

to consider the proof contained in these exhibits as part of its determination of the issues at

summary judgment.[3]

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if

the party "shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).  The Supreme Court has stated that "[t]hough determining whether there is a genuine

issue of material fact at summary judgment is a question of law, it is a legal question that sits near

the law-fact divide."  *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009).  In reviewing a motion for

summary judgment, a court must view the evidence in the light most favorable to the nonmoving

party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A court does

---

[3] It is true Whitson testified in her deposition that she kept notes about different incidents with cafeteria employees and stored them in a file in her office, apart from the employees' official personnel files.  Whitson Dep. 15:22-16:8, Apr. 30, 2021 (ECF No. 31-1).  Whitson testified that she typed up notes about various incidents with Bolden and added them to a file she kept on Bolden.  Whitson Dep. 17:8-16, 18:7-12.  Whitson went on to answer several questions about specific notes contained in the file and seemed to identify notes bearing the same dates as the notes attached as exhibits to the Board's Motion for Summary Judgment.  However, the Board has not cited this testimony to authenticate the notes, much less shown why Whitson's testimony resolves the hearsay objections raised by Bolden.

not engage in "jury functions" like "credibility determinations and weighing the evidence." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). Rather, the question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## <u>ANALYSIS</u>

The Board seeks judgment as matter of law on four discrete issues: (1) Bolden's claim for violation of the ADA's anti-retaliation provision, (2) her claim for associational discrimination in violation of the ADA, (3) her claim for race discrimination in violation of Title VII, and (4) her prayer for compensatory and punitive damages for the violation of the ADA's anti-retaliation provision.

In order to prove each of her discrimination claims, Bolden "must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.*, 319 F.3d 858, 864–65 (6th Cir. 2003). "Direct evidence explains itself" and "does not require the factfinder to make any inferences before concluding that unlawful discrimination happened." *M.J. by and through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 452 (6th Cir. 2021) (citation omitted). In other words, direct evidence is a kind of "smoking gun." *Id.* (quoting *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d

11

672, 683 (6th Cir. 2016)). In this case Bolden's disability and race discrimination claims are based strictly on circumstantial evidence. "Circumstantial evidence . . . is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). Where as here a plaintiff offers only circumstantial evidence of unlawful discrimination, the Court analyzes the case using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011) (ADA associational discrimination); *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 304 (6th Cir. 2019) (ADA retaliation); *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 772 (6th Cir. 2018) (Title VII race discrimination). With this framework in mind, the Court will analyze the merits of each of Bolden's claims in turn.

## I.     ADA – Retaliation

Bolden first claims that the Board decided not to renew her contract in retaliation for her protected activity under the ADA. The ADA's anti-retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). Applying the *McDonnell Douglas* burden-shifting framework, Bolden must first prove the following elements of her prima facie case of retaliation: (1) she engaged in protected activity under the ADA, (2) the Board knew of the protected activity, (3) the Board took an adverse action against her, and (4) there was a causal connection between the adverse action and Bolden's protected activity. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 661 (6th Cir. 2020) (citing *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 696–97 (6th Cir.

2013)).  The Sixth Circuit has counseled that the plaintiff's burden at the first stage is easy to meet. *Id.* (citation omitted).

The parties agree that Bolden can prove the first three elements of her retaliation claim: she engaged in protected activity, the Board knew about the activity, and the Board took an adverse action against her.  The parties disagree over whether there is evidence of a causal connection between Bolden's protected activity, i.e. her report to the Tennessee Department of Education, and her dismissal.  The Board contends that Whitson had proposed not renewing Bolden's contract the previous school year before Bolden had ever engaged in protected activity, cutting against an inference that Whitson recommended Bolden's non-renewal in retaliation for her protected activity.  Bolden answers that the temporal proximity between her protected activity and the Board's decision not to renew her contract is enough to prove causation.

The Court holds that a reasonable juror could find a causal connection between Bolden's report to the State of Tennessee in November 2017 and the Board's decision not to renew her employment contract in May 2018.  The Court of Appeals has held that "an inference of causation may arise solely from the closeness in time between the point at which an employer learns of an employee's protected activity and the point at which it takes an adverse action against that employee," usually a matter of months.  *Id.*  The Board took action about six months after Bolden made her report to state education authorities and the attorney from the state department of education contacted the superintendent about the issue.  Generally speaking, timelines where more than six months have passed since an employee's protected activity do not imply a causal connection between that activity and a subsequent adverse action.  *See Nicholson v. City of Clarksville, Tenn.*, 530 F. App'x 434, 448 (6th Cir. 2013) ("A time period greater than six months, without more, is not a sufficiently short period of time to satisfy the causal connection element of

a retaliation claim."). The fact that the Board terminated Bolden's employment six months after she made protected complaints is enough to suggest a connection, though perhaps not as strong an inference as it would have been under a shorter timeframe.

However, the passage of time is not as significant under the facts of this case, at least as viewed in a light most favorable to Bolden. Bolden had an employment contract for the 2017-2018 school year. A reasonable juror could find that rather than terminate Bolden's contract in the middle of the school year, the Board allowed her to work out the remainder of her contract before deciding not to renew her employment for the next school year. The Sixth Circuit has explained that a longer span of time may still suffice to prove causation if the employer acts at "its first meaningful opportunity to retaliate against the plaintiff, even if that opportunity did not arise until several months after the plaintiff's protected conduct." *Kirilenko-Ison*, 974 F.3d at 661 (citations omitted). In other words, if the Board's decisionmakers resolved not to renew Bolden's contract at the end of the school year in retaliation for Bolden's complaints, then May 2018 was the "first meaningful opportunity" the Board had to take such action. The fact then that six months passed between her protected complaint and her non-renewal arguably is still consistent with a causal connection between the two events.

The Board's point that Whitson had first expressed her preference not to re-hire Bolden at the end of the 2016-2017 school year, only to be overruled by the principal of the school, is true as far as it goes. The fact that Whitson had already stated an intent not to rehire Bolden the year before cuts against any inference that Bolden's subsequent protected activity motivated Whitson personally to retaliate. The Board's argument, however, actually cuts both ways. While it is true that Whitson had suggested the Board not renew Bolden's contract at the end of the 2016-2017 school year, the fact is the Board renewed her contract. The Board only terminated Bolden's

employment after she engaged in protected activity.  In order to prove causation, Bolden's burden is to show "the adverse action would not have been taken in the absence of the protected conduct." *Id.* (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002)). And the record shows that Bolden's performance evaluations were largely consistent for each of the three years she worked in the Lake County Schools.  She lost her position for essentially the same reasons Whitson identified in previous performance reviews and after Whitson continued to scrutinize Bolden's job performance, perhaps more closely than she did for other food service workers. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 449 (6th Cir. 2020) ("Generally speaking, heightened scrutiny is reflected by a similar three-step pattern: an employee engages in conduct that, while technically objectionable, is blessed, or at least tolerated, by the employer; the employee engages in protected activity; the employer then takes an adverse action against the employee for conduct the employer had previously allowed.").  So the fact that Bolden kept her job after Whitson wanted to dismiss her and then only lost it after she engaged in protected activity reasonably suggests a causal relationship, at least when viewed in a light most favorable to Bolden. While the strength of the causal connection is somewhat debatable, the Court holds that Bolden has presented enough evidence on this element to survive summary judgment.

The burden of production now shifts back to the Board to show that it had "a legitimate, non-discriminatory basis" for its adverse action. *Kirilenko-Ison*, 974 F.3d at 661.  "[T]he employer's burden is satisfied if [it] simply explains what [it] has done or produc[es] evidence of legitimate nondiscriminatory reasons." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  The Board through the testimony of Superintendent Darnell, Principal Snyder, and Whitson has shown that it decided not to renew Bolden's contract out of concern over her poor attitude on the job and friction with other school staff.  The Sixth Circuit has held that reasons of

15

this sort are legitimate and non-discriminatory.  *Messenheimer v. Coastal Pet Prods., Inc.*, 764 F. App'x 517, 520 (6th Cir. 2019) ("poor demeanor toward" fellow employees); *Land v. So. States Cooperative, Inc.*, 740 F. App'x 845, 848 (6th Cir. 2018) ("personality conflicts with upper management"); *Cady v. Remington Arms Co.*, 665 F. App'x 413, 420 (6th Cir. 2016) ("attitude and lack of professionalism").  Bolden attacks the credibility of the Board's proffered reason for her termination.  However, the Board's "burden is one of production, not persuasion; it can involve no credibility assessment."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  Bolden's argument amounts to a claim that the Board's reason for her termination is unfounded.  That argument is better aimed at the final stage of the burden-shifting analysis.

Since the Board has met its burden of production, the burden now shifts back to Bolden to produce evidence that the Board's proffered reason for her dismissal was pretext for unlawful discrimination.  *Kirilenko-Ison*, 974 F.3d at 667 (citing *Shelby Cnty.*, 711 F.3d at 697).   This is but another way of saying that Bolden must "show that the question of pretext is a genuine factual dispute."  *Id*. (citing *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011)).  "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation."  *Id*. (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)).  As the Court noted in its discussion of the disputed and undisputed facts at this stage of the case, the parties contest the Board's assessment of Bolden's job performance.  Decisionmakers describe Bolden as abrasive and ill-tempered on the job, and Bolden flatly denies it.  And where Whitson and Principal Gamble had negative impressions of Bolden's attitude and workplace behavior, Bolden's direct supervisor Angela Ballard had a positive relationship with Bolden and found her to be hardworking, going so far as to state that she would have recommended that the Board continue Bolden's employment.  This evidentiary dispute

is enough to preclude summary judgment on the question of whether the Board's reasons for not renewing Bolden's employment were pretext to hide unlawful retaliation.  Therefore, the Board's Motion for Summary Judgment must be **DENIED** as to this claim.

## II.        ADA – Associational Discrimination

Bolden next alleges that the Board discriminated against her due to her association with an individual with a disability.  The ADA prohibits an employer from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association[.]"  42 U.S.C. § 12112(b)(4).  The Sixth Circuit has recognized three general theories of ADA associational discrimination: "(1) expense; (2) disability by association; and (3) distraction."  *Stansberry*, 651 F.3d at 487 (citing *Larimer v. Int'l Bus. Machs. Corp.*, 370 F.3d 698, 700 (7th Cir. 2004)).  The "expense" theory typically involves "an adverse employment action against an employee because of the cost of insuring the associated disabled person under the employer's health plan."  *Williams v. Union Underwear Co., Inc.*, 614 F. App'x 249, 254 (6th Cir. 2015) (citing *Stansberry*, 651 F.3d at 487).  "The disability-by-association theory takes two forms: (1) if the employer fears that the employee may contract the disability of the person he or she is associated with, or (2) if the employee is genetically predisposed to develop a disability that his or her relatives have."  *Id.*

Bolden pursues neither of these particular theories in her case and alleges instead a distraction theory.  The "distraction" theory pertains to discrimination "against an employee because the employee has been somewhat inattentive at work because of the disability of the associated person."  *Stansberry*, 651 F.3d at 487.  In order to carry her burden on such a claim, Bolden must prove each of the following elements at the summary judgment stage: (1) she was

qualified for the position; (2) she was subject to an adverse employment action; (3) she was known to be associated with a disabled individual; and (4) the adverse employment action occurred under circumstances that raise a reasonable inference that the disability of the relative was a determining factor in the decision. *Id*.

The Court holds that Bolden can make out her prima facie case of associational discrimination. The Board's arguments for the dismissal of the associational discrimination claim are not altogether clear to the Court, and in some ways Bolden's case does not fit the typical "distraction" theory or any other paradigm of associational discrimination. The Court understands the Board's argument to be that Bolden cannot prove the claim because the school district was aware of her son's disability at the time it hired Bolden and that Bolden's contract was not renewed due to her "being discourteous, unreceptive to constructive criticism, and uncooperative with her co-workers." Def.'s Mem. in Support 11 (ECF No. 30-1). According to the Board, this proof is inconsistent with concerns over Bolden possibly being distracted or inattentive at work.

The Court disagrees. The first three elements of the claim are uncontested: the Board concedes that Bolden was qualified for her position, she suffered an adverse action, and she was known to be associated with a disabled person.[4] As for the fourth element, the evidence when viewed in a light most favorable to Bolden implies that her son's disability was a determining factor in her losing her position with the Lake County Schools. The proof presents a somewhat close call. The Board cites Bolden's unprofessional behavior as the sole reason for her dismissal. Board decisionmakers uniformly describe Bolden's demeanor as "hateful" or "hostile."

---

[4] The Board argues that Board decisionmakers had known about Bolden's child's disability when Bolden was hired. However, the Board has cited no evidence to support its assertion. More fundamentally, the Board's point actually goes to the third element of the claim, and not the fourth.

Nevertheless, as the Court has already explained, the fact is Bolden's performance evaluations were consistent throughout her tenure. Whitson noted many of the same concerns about Bolden's attitude in each of her annual evaluations, the same personality issues which the Board noted in its decision not to rehire Bolden. Only two intervening events occurred during Bolden's third year: (1) the episode surrounding Bolden's son and what food he received in the school cafeteria, and (2) the friction between Bolden and another cafeteria worker Kim Mills. According to Bolden's direct supervisor, Angela Ballard, Bolden and Mills worked through the issues they had. So the Court is left with the events with Bolden's son and his need for a dietary accommodation in his school lunches and the Board's decisionmakers' vague description of Bolden as "hateful" or "hostile." A reasonable juror could find from that evidence that the Board regarded Bolden's advocacy for her child as a workplace "distraction" and reinforced the Board's view of her being "hateful" or "hostile" to school leadership. In short, Bolden can show that her association with her disabled child was a determining factor in Bolden's eventual termination. The Court concludes then that the Board has not shown why it is entitled to judgment as a matter of law.

Just like Bolden's ADA retaliation claim, her ADA associational discrimination claim follows the *McDonnell Douglas* burden shifting framework. For the same reasons that genuine issues of material remain as to the ADA retaliation claim, genuine issues remain as to the ADA associational discrimination claim. The Board has proof of a legitimate, nondiscriminatory reason for not rehiring Bolden, and Bolden has proof to contest or call into doubt the reasons given by the Board. Therefore, the Board's Motion for Summary Judgment is **DENIED** as to this issue.

## III. Title VII – Race Discrimination

Bolden's third and final substantive claim for relief is that the Board discriminated against her on account of her race in violation of Title VII of the Civil Rights Act of 1964. Title VII states

that it is an "unlawful employment practice for an employer . . . to discriminate against any individual . . . because of [his] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  Bolden bears the initial burden to establish her prima facie case of discrimination by showing that (1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was treated differently than similarly situated non-protected employees. *Id.*[5]  Only the fourth element of Bolden's race discrimination claim, that she was treated differently than similarly situated non-protected employees, is actually in dispute.[6]

The Sixth Circuit has held that in order to make this showing, "a plaintiff need not show an exact correlation" with the employee receiving more favorable treatment. *Miles v. S. Cent. Human Res. Agency, Inc.*, 946 F.3d 883, 893 (6th Cir. 2020) (citing *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012)).  Rather, Bolden's burden is to show that she and a comparator were similarly situated in "all relevant respects." *Id.* (citations omitted).  Bolden

---

[5] Bolden can also make her prima facie showing with proof that she was replaced by a person outside of her protected class. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). However, Bolden has not raised this issue or cited any proof to make the showing at summary judgment.  It appears to be undisputed that the Board filled Bolden's position by hiring another African-American woman.

[6] Some of Bolden's arguments in her briefing could be read to argue that the Board also discriminated against her by requiring her to document her child's food sensory issue in ways that parents of other children were not.  Even if Bolden could prove that to a jury, she has not shown why it would be relevant to her claim for employment discrimination.  There is no proof that the other parents to whom she refers were also Lake County Schools employees.  And even if they were, the Sixth Circuit has held that broad accusations about non-protected employees generally receiving more favorable treatment do not carry a plaintiff's burden as to this element. *McNeil v. Sonoco Prods. Co.*, 519 F. App'x 382, 384 (6th Cir. 2013) (holding that the plaintiff failed to make out his race discrimination claim where he offered "only vague, conclusory statements that unnamed white employees 'are allowed to clock in late, if at all,' and are 'not written-up for every little infraction like blacks are'").  The Court finds that this line of argument fails to show why triable issues remain over Bolden's Title VII claim.

argues in her summary judgment brief that the Board treated a similarly situated, non-protected employee Kim Mills more favorably.  Bolden asserts without much explanation that Mills "had been involved in previous episodes with other employees and had words with Ms. Bolden" but nevertheless "received job renewal for 2018-2019."  Pl.'s Resp. in Opp'n 14 (ECF No. 33-4).

In support of this argument, Bolden cites the affidavit of Angela Ballard, the school cafeteria supervisor who oversaw both Bolden and Mills at Margaret Newton Elementary in the 2017-2018 school year.  In her affidavit, Ballard states that Bolden had "a couple of disagreements" with Mills and that everyone "worked through those issues."  Ballard Aff. ¶ 7.  In Ballard's opinion, Bolden was "not at fault in those disagreements."  *Id*.  Bolden also cites deposition testimony from Lori Cain, Mills' previous supervisor at another school cafeteria in the district, that Mills "had had words" with another cafeteria worker, either during the 2015-2016 or 2016-2017 school year.  *See* Cain Dep. 6:21-7:25, Apr. 30, 2021 (ECF No. 33-3).[7]

Bolden's argument in essence is that she and Mills were disciplined differently for engaging in the same type of conduct.  In the context of disparate disciplinary treatment, the Sixth Circuit has explained that "the plaintiff and his proposed comparator must have engaged in acts of 'comparable seriousness.'"  *Martinez v. Cracker Barrell Old Country Store, Inc.*, 703 F.3d 911, 917 (6th Cir. 2013) (citation omitted).  As part of its analysis of this element, the Court must examine "certain factors, such as whether the individuals have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such

---

[7] Bolden also cites her own deposition testimony in which she mentions this same proof about Mills' other disagreements with another school employee.  *See* Bolden Dep. 77:11-18, Apr. 30, 2021 (ECF No. 31-3).  It is not clear to the Court whether Bolden actually has firsthand knowledge of this fact or is simply repeating hearsay about Mills.  In any event, the proof is duplicative of the testimony offered by Cain and cited by Bolden for this same issue.  Therefore, the Court finds it unnecessary to consider Bolden's claims about Mills' record.

differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (citation omitted).

The Court holds that Bolden has not cited any evidence to show how she and Mills were comparable in all relevant respects.  The material Bolden has cited shows that Mills may have had verbal disagreements with co-workers.  But Cain could not even remember the school year when Mills had the workplace disagreement, much less the specific date of the incident, and offered no other detail about the episode or how management handled it.  Ballard's affidavit is vague at best. Ballard admits that Bolden and Mills had their "disagreements."  She also implies that neither Bolden nor Mills were disciplined over their disagreements because they "worked it out."  The Sixth Circuit has repeatedly held that in order to make a prima facie case of disparate discipline, a plaintiff must show she was treated differently than similarly situated non-protected employees over acts of "comparable seriousness."  *E.g. Savage v. Fed. Express Corp.*, 856 F.3d 440, 451 (6th Cir. 2017); *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 777 (6th Cir. 2016); *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016).  At the end of the day, generally characterizing the conduct of both employees as "disagreements" without spelling out the particulars does not show how their conduct was comparable. *Johnson v. Ohio Dept. of Public Safety*, 942 F.3d 329, 331 (6th Cir. 2019) ("Drawn at too high a level of generality, the 'comparable seriousness' test becomes meaningless.").  Other than these two short statements about Mills having "words" or "disagreements" with fellow cafeteria employees, Bolden has cited nothing about Mills' disciplinary history as a Lake County Schools employee.  Bolden has not produced any of Mills' performance evaluations or any other aspect of her personnel file with the Lake County Schools.  Without that evidence, Bolden has not shown why this is a case of disparate discipline where two employees were treated differently because of their race.

22

Putting aside the lack of evidence from which a reasonable juror could make a meaningful comparison of the two women, Bolden has not even shown what role, if any, her verbal spats with Mills played in the Board's decision not to renew Bolden's contract.  While they did reference Bolden's attitude and poor relationships with other staff, none of the decisionmakers for the Board have cited Bolden's conflict with Mills specifically as the grounds for Bolden's termination.  There is just no proof then that this was a situation where Bolden and Mills were each at fault, but Bolden was dismissed over the conflict and Mills got to keep her job.  Because Bolden cannot prove her race discrimination claim, the Board's Motion for Summary Judgment must be **GRANTED** as to this issue.

**IV. Prayer for Compensatory and Punitive Damages**

Finally, the Board seeks judgment as a matter of law on any claim Bolden has alleged for punitive damages and her request for compensatory damages as to her ADA retaliation claim.  The Court can quickly address the Board's argument regarding the availability of punitive damages. The Board argues that Bolden may not recover punitive damages against a department of county government like the Lake County Schools.  Bolden failed to address the argument in her response brief.  "When a plaintiff fails to address a claim in response to a motion for summary judgment, the claim is deemed waived."  *Alexander v. Carter for Byrd*, 733 F. App'x 256, 261 (6th Cir. 2018) (citation and internal punctuation omitted).  On the merits, the Board's argument that an employee may not recover punitive damages for the violation of federal anti-discrimination law has merit. *See* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) . . . .");  *Robinson v. Runyon*, 149 F.3d 507, 516 (6th Cir. 1998) (holding that punitive damages were not available against "governments, government agencies and political subdivisions" for the

violation of federal anti-discrimination laws).[8]   As such, the Court finds the Board is entitled to judgment as a matter of law on Bolden's prayer for punitive damages.

The Board also seeks summary judgment on Bolden's request for an award of compensatory damages, at least insofar as Bolden seeks them for the Board's violation of the ADA's anti-retaliation provision.  The Sixth Circuit has not addressed the precise issue presented regarding the availability of compensatory damages where an employee alleges ADA retaliation against her employer.  The Board relies on a line of cases construing the ADA's remedies provisions and holding that Congress did not include ADA retaliation among the acts of discrimination for which an employee may recover compensatory damages.  Bolden cites another line of cases reaching the opposite conclusion, based largely on the notion that retaliation is among the acts of "intentional discrimination" covered by most federal anti-discrimination laws and that like other acts of "intentional discrimination" under the ADA, Congress has authorized the recovery of compensatory damages for retaliation in the employment context.

The Court holds that compensatory damages are not available to an employee for acts of retaliation under the ADA, simply as a matter of statutory construction.  Before the Court reaches the actual statutory remedies available, a brief overview of the structure of the ADA is required. "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act, 42 U.S.C. § 12111–12117), public services (Title II, §§ 12131–165), and public accommodations (Title III, §§ 12181–12189)."   *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, n.21-23 (2001) (footnoted citations

---

[8] For reasons the Court discusses in more depth below, even if Bolden was seeking punitive damages against a non-government entity or political subdivision, she could not recover punitive damages for an act of retaliation under the ADA.

included in quotation).  The ADA's anti-retaliation provision, 42 U.S.C. § 12203, is found in Title IV, the ADA's "Miscellaneous Provisions" subchapter.  Section 12203(c) defines the available remedies and procedures for acts of ADA retaliation but does so by cross-referencing the enforcement provisions under other Titles of the ADA.  "The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for [retaliation], with respect to subchapter I, subchapter II and subchapter III, respectively."  42 U.S.C. § 12203(c).  Section 12117 defines the remedies under Title I of the ADA for disability discrimination in employment, section 12133 the remedies under Title II for discrimination in public services, and section 12188 the remedies under Title III for discrimination in public accommodations and services operated by private entities.  Section 12203(c)'s reference to "subchapter I, subchapter II and subchapter III, respectively" refers to the subchapters or titles of the ADA addressed to employment (Title I), public services (Title II), and public accommodations and services operated by private entities (Title III).  The Court therefore construes section 12203(c) to grant remedies for retaliation, each depending on the context in which the retaliation occurred: employment, public services, or public accommodations and services operated by private entities, respectively.

Because Bolden's ADA retaliation claim arose in the context of her employment, the Court looks to section 12117, the remedies provision for ADA discrimination in the employment context cross-referenced in section 12203(c).  Like section 12203(c), section 12117(a) does not list specific remedies but rather cross-references yet another statute, 42 U.S.C. §§ 2000e–5, which lists the remedies available for violations of Title VII of the Civil Rights Act of 1964.  § 12117(a) ("The powers, remedies, and procedures set forth in sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9 of this title shall be the powers, remedies, and procedures this subchapter provides to the

25

Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment."). Section 2000e–5(g)(1) of Title VII then authorizes a court to order certain "equitable relief as the court deems appropriate" but does not permit a court to order compensatory or punitive damages. 42 U.S.C. § 2000e–5. Following this chain of remedies provisions, the Court concludes that the ADA's anti-retaliation provision, 42 U.S.C. § 12203, authorizes only equitable relief and does not authorize an award of compensatory damages in the employment context.

This does not end the Court's inquiry, however, because in 1991 Congress expanded the remedies available under 42 U.S.C. § 1981a to plaintiffs prevailing on specific types of employment discrimination claims, including disability, to include compensatory and punitive damages. 42 U.S.C. § 1981a(a)(2); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72 (2006) (citations omitted) ("In any event, Congress amended Title VII in 1991 to permit victims of intentional discrimination to recover compensatory (as White received here) and punitive damages, concluding that the additional remedies were necessary to 'help make victims whole.'"). Section 1981a(a)(2) allows compensatory and punitive damages only for acts of intentional disability discrimination in violation of "section 102 of the [ADA, 42 U.S.C. § 12112]" and (2) the failure to accommodate a person with a disability in violation of "section 102(b)(5) of the [ADA]." § 1981a(a)(2).

In sum, 42 U.S.C. § 12203 does not permit an employee with an ADA retaliation claim to recover compensatory damages, and while section 1981a(a)(2) created an exception to that rule in certain defined cases, ADA retaliation is not one of them. A majority of the federal courts to have considered the issue have reached the same conclusion that compensatory damages are not

available to an employee for an employer's violations of the ADA's anti-retaliation provision. *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269–70 (9th Cir. 2009) ("[T]he plain and unambiguous provisions of 42 U.S.C. § 1981a limit the availability of compensatory and punitive damages to those specific ADA claims listed. ADA retaliation is not on the list."); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 965 (7th Cir. 2004) ("Because claims of retaliation under the ADA (§ 12203) are not listed, compensatory and punitive damages are not available for such claims. Instead, the remedies available for ADA retaliation claims against an employer are limited to the remedies set forth in § 2000e–5(g)(1)."), *cert. denied*, 542 U.S. 932 (2004); *Bowles v. Carolina Cargo, Inc.*, 100 F. App'x 889, 890 (4th Cir. 2004) (adopting the holding of *Kramer* without analysis) (unpublished per curiam); *Rhoads v. FDIC*, 94 F. App'x 187, 188 (4th Cir. 2004) (same) (unpublished per curiam); *Tucker v. Shulkin*, Nos. 20-1317, 20-1318, 2020 WL 4664805, at *1 (3d Cir. 2020) (same) (unpublished). In light of this authority, the Court concludes that Bolden may not recover compensatory damages should she prevail on her ADA retaliation claim at trial.

Bolden seeks to avoid this outcome by articulating what is the minority view on the question of whether section 1981a(a)(1) allows compensatory damages in cases of ADA retaliation. Representative of this line of authority is *Baker v. Windsor Republic Doors*, 635 F. Supp. 2d 765 (W.D. Tenn. 2009) (Breen, J.), *aff'd on other grounds*, 414 F. App'x 764 (6th Cir. 2011). *Baker* noted that the text of section 1981a(a)(1) was not ambiguous in a "strict" or "literal" reading. *Baker*, 635 F. Supp. 2d at 768. However, when read in light of the ADA as a whole, *Baker* found section 1981a(a)(1) ambiguous in that it produced the "absurd" result of compensatory damages being available for acts of "intentional discrimination" but not retaliation. *Id.* at 771. *Baker* also cited for support *Gomez-Perez v. Potter*, 553 U.S. 474 (2008) where the Supreme Court held that the Age Discrimination in Employment Act ("ADEA")'s prohibition on

27

acts of "intentional discrimination" implied a cause of action for retaliation.  *Id*. at 770 (quoting *Gomez-Perez*, 553 U.S. at 481).  Because section 1981a(a)(1) authorized compensatory damages for "intentional discrimination" under the ADA and federal law understands "intentional discrimination" to include retaliation, *Baker* reasoned that section 1981a(a)(1) permitted a plaintiff with a successful ADA retaliation claim to recover compensatory damages.

The Court finds *Baker* instructive but ultimately unpersuasive.  The issue is a matter of statutory construction and as the *Baker* court notes, the statute is clear and unambiguous.  The fact that the remedies provision of § 12203(c) of the ADA does not allow for compensatory damages in employment retaliation cases and that Congress clearly left ADA retaliation off of its list of ADA claims for which compensatory damages are available under 42 U.S.C. § 1981a, the Court's analysis is at its end.  Therefore, the Board's Motion for Summary Judgment on Bolden's prayer for compensatory damages as to her ADA retaliation claim is **GRANTED**.

## CONCLUSION

Triable issues remain over Bolden's ADA claims for retaliation and associational discrimination.  However, the Lake County Board of Education is entitled to judgment as a matter of law on Bolden's Title VII race discrimination claim and her prayer for punitive and compensatory damages on her ADA retaliation claim.  Therefore, the Board's Motion for Summary Judgment is **GRANTED in part, DENIED in part**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: October 21, 2021.

28